May it please the court, again Andrew Koenig, K-O-E-N-I-G for Plaintiff Appellant Maria de Los Angeles Ruiz. Again, I would like to set aside two minutes for rebuttal if I could. Thank you. This case, the main issue or the main error that I would assert is the failure of the ALJ to properly consider and cross examine or question the vocational expert on the impact of her illiteracy in English. We have a case that I would assert, the Pinto case is directly on point here. We have strikingly similar facts except for the one difference in our favor is in Pinto, they remanded for assessment and cross examination of the vocational expert on the impact of English illiteracy on jobs that have a language development of 1. Counsel, I'm curious about where you think that English proficiency fits in the sequential analysis. I have a hard time seeing why that would be relevant at step four. It seems to me the question there is whether the physical impairments, which is the issue in this case, prevent her from doing the work that she used to actually perform with whatever skills she had. I'm not sure what English proficiency has to do with step four. That's an important distinction, your honor. You stated, how does English impact her ability to actually perform her past relevant work? There's a two-step analysis at step four as far as past relevant work. One, can a person do it as actually performed and as generally performed in the national economy? The judge in this case did not find that she could do her past work as a sewing machine operator as actually performed. She only found as generally performed. That's the whole basis of step four. The court's review is limited to what the judges articulate, the ALJs articulate is the reason. We're focusing on only work as generally performed. Under Pinto, under Social Security Ruling 8261, 8262, Social Security Ruling 004P, they all refer to the DOT as the source of how to assess work at step four as generally performed in the national economy. The DOT says language is important. There's six language developments in Appendix C of the DOT talking about language requirements on how a job is generally performed. I would assert there's no difference in step five DOT analysis and step four DOT analysis as far as how a job is generally performed. We look at the DOT, it says these are job requirements and under our scenario we have a language development requirement of 02, which requires a person to speak 5,000 to 6,000 words in English fluently, read 195 to 210, I believe, words per minute. That is so far beyond what my client can do. It's clearly a conflict with the DOT that needed to be resolved under SSR 004P and Musashi case in this project. Can I ask you a question? I'm looking at page 26 of the ALJ's ruling, which I think is page 41 of the transcript, if I have my pages correctly. In paragraph 6, it seemed to me that there's a finding as to work actually performed, not merely work in the national I'm trying to get up to speed here. 42. Yeah. 41, I think. 41, finding number 6, the last We're looking at the last sentence. Is able to, as generally performed. There's nothing in there that says as actually performed in that entire sick page. Well, there is. The light per DOT and as performed, which claim it is able to perform. So it's an ambiguous sentence, but I took it to mean that the VE said both as performed and generally. Well, if your Honor reviews the actual testimony of the vocational expert, the vocational expert does not delineate that. And that is a hole in the record that should have been clarified by the ALJ and did not. And on remand, it should be clarified. We have a scenario where the judge is required to issue clear findings on both actually and generally. The only clear finding was as generally performed. And, you know, under the Stout and Connett and Chenery cases, we're restricted or the courts are restricted to assess only the reasons actually articulated by the ALJ. And so if on remand the ALJ were to say she could perform as she did it before, then she loses? If the other factors are found to be the same, potentially yes. The record is actually quite unclear on what she actually did actually performing. There's no evidence in the record on how much she actually lifted, carried, you know, on her feet. She had assistance of her son to go get product to bring home for the sewing machine. I can imagine rolls of material weighing much more than 20 pounds. The record is devoid on how much she actually had to lift in doing the sewing machine operator job. That's another huge hole in the record. Apparently it's in the record, though, that she did perform work sewing at home, sewing blouses, earning, I think, a maximum of something like $16,000 for the year. But under a light RFC, if she lifted more than 20 pounds, then she couldn't do it as actually performed. There's no evidence in the record on what would a roll of material, you know, or cloth weigh? Let's get that on the record. We don't know if she could do it as actually performed because we don't know how much she had to lift. So there's holes in the record on both sides of the actually performed and generally performed that need to be clarified to fully support. Now as far as leading into also what Judge Graber asked is the RFC finding, I don't believe is adequate either because there's clearly shoulder and hand issues. She was recommended to use a splint or splints on her hands. She has shoulder issues that the judge only found overhead reaching. But if you're a sewing machine operator, you're reaching out in front of you, you're using your hands all the time. The RFC finding has absolutely no fine or gross manipulation and no below shoulder reaching limitations. That, I think, is a clear, you know, inadequacy in the RFC finding, let alone, you know, the types of limitations that Dr. Grogan submitted and we argued there that, you know, there was not specific and were much less than light work RFC. Good morning, Your Honors. May it please the Court, Daniel Talbert on behalf of Nancy Berryhill, the Acting Commissioner of Social Security. Substantial evidence supports the ALJ's finding that the claimant could perform her past relevant work. Now the main issue that Mr. Koenig has addressed... Does the ALJ make a finding? Just there's evidence that would support such a finding you've made? Both, Your Honor. Both the ALJ made the finding that she could perform her past relevant work and substantial evidence supports the ALJ's finding on that point. The past relevant work as performed? So in the ALJ's decision, the ALJ's decision says she could perform her past relevant work as it's generally performed. So I'll get into that issue because that's the main issue that we were taught, that Mr. Koenig was addressing this morning. Whether we're talking about the as actually performed or as generally performed at Step 4, education, which includes language, does not apply at Step 4. That's plain. On the face of the Social Security Act itself, 42 United States Code section 423D2A, and I could quote the language and get into that if the court wants to talk about that. So I have that ready if the court wants to address that, but I would note that language is fairly plain, but the commissioner's regulations interpreting that language are even clearer. And that's Title 20 of the Code of Federal Regulations 404.1560B3, I believe, states that if we find, meaning the agency, that you, for a claimant, can perform your past relevant work, we're not going to look into your age, your education, or your work experience, just not going to consider it. And 404.1564, I think it's B5 in the regulations, defines language ability, ability to communicate in English as part of education. So it's our position that the education, which includes the claimant's ability to communicate in English, just doesn't apply in this case. It just doesn't come into play because it's a Step 4 case. And this court in Silvera v. Apfel, which came, I think, about a year before Pinto v. Massonari, stated, similarly, that education just doesn't apply until Step 5. And in fact, even though the court in Silvera mentions that in a footnote, I would submit that that footnote is essential to the holding in that case of Silvera about who has the burden to prove or establish education. This court said in Silvera that the commissioner has the burden to establish the claimant's level of education because there's a burden shift at Step 5. And the court in Silvera said, well, we consider that the burden is on the commissioner for that issue because this is just a Step 5 issue. This issue of education doesn't come into play until Step 5 of the sequential evaluation process. And I'd also direct the court's attention to, cited in our brief, the Sixth Circuit's case in Garcia v. Secretary of HHS, which said that the inevitable reading of the Social Security Act is that language abilities as part of education just don't come up until Step 5. So, I mean, that's essentially what our position is, that the claimant's ability to communicate in English just wasn't relevant here. So there is no apparent conflict and there's no error in the ALJ's reliance on vocational expert testimony and Step 4 finding. If the court doesn't have any other questions on that issue, I could address briefly the other point that Mr. Koenig has made this morning, which is about the claimant's residual functional capacity. The claimant argued that the ALJ's RFC finding was not sufficient because the ALJ didn't include certain manipulative limitations, issues with the use of the claimant's overreaching. And the claimant's argument was, well, the only limitation the ALJ found there was a limitation from overhead reaching, but she claims that she had other limitations as well. The ALJ considered those allegations, but relied on examining source Dr. Bernabe's opinion and state agency physicians Dr. Hartman and Dr. Lizararas' opinion that the claimant's only manipulative limitation was a preclusion from more than I think it was frequent overhead reaching. So there's substantial evidence from those three opinions that supports the ALJ's finding on that point. Now she testified that she has bowel trouble requiring her to use the bathroom every 45 minutes to an hour. And the vocational expert says, well, if that's true, that precludes her work. How do you respond to that? Response to that is the ALJ rejected that testimony and rejected the claims that the claimant had those limitations. And the reason for that, as the ALJ states in the decision, I could find that I think it's on page 24 of the administrative record. It might be on page 23 as well, that the ALJ notes the claimant's allegations, but says that she hasn't reported that frequency to her treatment providers and it's not supported by examination basis in the record for that alleged limitation. When you look through the treating doctor's notes, there are references to this problem. Well, can you tell me, if you're not going to tell me where, because I didn't see anywhere in the record that there was a reference to bowel. You keep trucking and I'll track one down. Okay, thank you, Your Honor. So my reading of the medical record here is that the claimant, and I think it was around November 2010, which was almost a year before her alleged onset of disability, she had colon surgery. And she had some pain and some issues in her recovery. It seemed like it was a slow, difficult recovery over the next six months or so. But she recovered from that surgery and that procedure. And subsequent notes that have GI complaints, gastrointestinal complaints, note that she said she had stomach aches, she had some abdominal cramping. I think there's complaints of heartburn and gas and issues like that. But there's just no statement anywhere that the claimant had this loss of bowel control. And there's also no statement that I saw on the record, and if Judge Owens wants to correct me, I'll be happy to look at that. But there's nothing I saw on the record that indicated that claimant's doctors told her, well, because we did this surgery, you're just not going to be able to control your bowels. There's no support for that. So on SCR 281, there's a reference. It looks like it's a progress report dated December 1st, 2010, that has pain and discharge brown, I think we all know what that is, six times a day, which is about, I don't know, hour, hour and a half every day. So it seems like there is evidence in the record to support what she was saying, and I didn't see the ALJ dealing with that. Well, Your Honor, I'd make a couple of points there. The first point is that December 2010, again, is before the claimant's alleged onset of disability. So based on this claimant's application, she wasn't even saying that she was disabled when she had this discharge that she's reporting here. The other point is that I would note that to the extent that this is relevant to the ALJ's decision of whether she was disabled from October 2011 through the date of the decision, six times a day, that's not every hour and a half. That's about every four hours. That's about six times a day. Even if it's during waking hours, maybe it's every two hours. But we know that claimants are entitled to breaks every two hours. Right, but we don't know when she says six times a day. She might be saying during the working day. I mean, the notes are not totally clear, and I think the concern I have at least is that the ALJ didn't, I mean, if you have the problem she has, it's very sad. And I'm not sure the ALJ really, other than saying she doesn't have it, which I think there's evidence she does, the ALJ didn't really, at least in my mind, explain how could someone do the job she's supposed to be doing if she has to get up every 45 minutes and go. Is your response that she did not prove that, or that the ALJ explained why she could still have a job if that was her symptom? No, Your Honor, I think it's that she didn't prove that. And I would note that this one note that's on page 281 that says pain and discharge brown six times per day, I mean, that's one reference in the record. Again, it's before the alleged onset date. There's no indication that this has recurred in any way. And it's during this period when she's right after recovery from the colon surgery. She's still having issues in her recovery. And the idea that this indicates, this says discharge six times a day indicates a loss of bowel control, just an inability to control herself and just needing to use the bathroom every 45 minutes to an hour, that, I mean, I'll submit that maybe some fact finder could interpret that as supporting her allegations. I don't even think it's reasonable in search order to interpret that note on page 281 as supporting those specific allegations. But even if that was one reasonable interpretation of that one page in the record, it's only one page. It doesn't recur. It certainly doesn't occur anywhere during the relevant period for her claim of disability. And this Court's case law from since Vincent v. Heckler in the 1980s, I think more recently in Howard v. Barnhart, stated that the ALJ needs discuss only significant probative evidence. And if this is one note from nine months or 10 months before the alleged onset date, doesn't specifically support the allegations she made. Nobody's pointing to this. Nobody's relying on this. I don't think the claimant has identified this as, I mean, if they did, maybe I'm mistaken, but I don't think anyone's argued that, well, this is the smoking gun. And if that's the only thing on the record that supports the claimant's allegations, the ALJ was well within his role, his discretion as fact finder to find that the claimant hadn't supported those rather extreme allegations of a total loss of bowel control. So the record doesn't support that allegation. The court, substantial evidence certainly supports the ALJ's finding that the claimant didn't have that level of limitation. And we ask the court to affirm the ALJ's decision as supported by substantial evidence. Okay. Thank you. Thank you, Your Honors. Response, Mr. Koenig. I'm going to try to touch on all these issues as quickly as I can. First, it's rather incongruous for the commissioner to assert that education and language limitations don't apply at step four, perhaps as actually performed, but the commissioner cannot have it both ways. It cannot adopt Social Security rulings 8261, 8262, 004P saying at step four, we look to the DOT for the as generally performed analysis. The DOT says language matters. You cannot have it both ways. I don't think it's proper for the commissioner to adopt incongruous rulings and then ask the courts to reconcile them. The regulations also, 404-1560B and 404-1566D talk about the DOT. We are adopting that to assess how jobs are performed in the economy. The DOT's unequivocal language matters. The Pinto Court did not want to address this issue, and if this court is not inclined to precedent anyway, the Pinto precedent said, even at step four, that ALJ is required to get sufficient findings to support the step four findings. We don't have, as actually performed, any evidence about how much was lifted at this job, and as generally performed, we don't have any support for the language limitations, and there's no cross-examination or examination of the vocational expert on the impact. Pinto had a language, remanded on it for a language level of one job. We have a language level of two jobs. Now as far as the RFC finding, especially with the colon, she had three surgeries in 2011, a year later to close, and then had to have mesh put in in 2013. She had three surgeries in 2013, all after the alleged onset date. There's notations of mesh failure. There is supportive evidence that the need for bathroom breaks is a legitimate basis, and the judge did not have the clear and convincing basis to reject that testimony. Thank you.
judges: Graber, W. Fletcher, Owens